Mr. Justice Humphreys
delivered the opinion of the court:
This case has been reheard, and the majority of the court find no reason to alter the judgment of the last term.
The petitioner filed his application for the writ of mandamus, requiring the Commissioner to issue a patent for “an improvement in harvesters.” The Patent-Office is attached to the Department of the Interior, and the Commissioner of Patents, under the direction of the Secretary of the Interior, is required to superintend or perform all duties respecting the granting and issuing of patents directed by law. The Commissioner of Patents and three examiners-in-chief are nominated and appointed by the President and Senate. (Section 470.) The language of section 482 is as follows: “The examiners-in-chief shall be persons of competent legal knowledge and scientific ability, whose duty it shall be, on the written petition of the appellant, to revise and determine upon the validity of the adverse decisions of examiners upon applications for patents, and for re-issues of patents,, and in interference cases; and, when required by the Commissioner, they shall hear and report upon claims for extensions, and perform such other like duties as he may assign them.” Section 4904 authorizes an appeal to the board of examiners in-chief and the Commissioner in interference bases. Section 4909 provides for an appeal to the board of examiners-in-chief in three classes of cases : the application originally, the application for a re-issue, and in interference. Section 4910 provides for an appeal from the decision of the examiners-in-chief to the Commissioner in person. These are the only sections making any provision for the action of the board of examiners-in-chief.
In the case before us, the relator, Hull,- states that his application was twice rejected by the primary examiner, whereupon he appealed to the board of examiners-in-chief, and they determined that he was entitled to a patent; that, in August, 1869, he paid into the office $20, the fee required by law ; that, notwithstanding this, the Commissioner of Patents refused to grant the patent, and sent the matter back to the examiners-in-chief, who re-affirmed their opinion, or decision, *138 that the patent should be allowed; that, on April 14, 1870, the Commissioner issued the following: “Further action in this case is suspended until the further order of the Commissioner.” The relator further states that he has applied to the Commissioner to issue the patent, who, “after having fully considered the application, denied the request,” &c. It is contended by the relator that the Commissioner is bound to issue the patent, because the board of chief examiners has pronounced that it should be done; that his duty is a mere ministerial one, aud, he having declined to perform that duty, this court must order him to sign the patent. That he is without remedy except this order.
Section 4911 provides that if any applicant for a patent is disatisñed with the decision of the Commissioner, he may appeal to this court. Section 4914 provides for the hearing the appeal and determining the same. No appeal having been taken in this matter, it is not necessary to decide whether it is a proper case for an appeal; for, apart from that consideration, the question is presented whether a mandamus can be issued 1 On an appeal, we are instructed by the statute what to try. The relator asks this court to order the Commissioner to issue a patent before placing before us in a regular, judicial mode the evidence that one ought to issue. He contends that because the chief examiners have determined that a patent ought to issue, therefore the Commissioner must perform the clerical, ministerial act of doing so. Section 481 is in the following language: “The Commissioner of Patents, under the direction of the Secretary of the Interior, shall superintend or perform all duties respecting the granting and issuing of patents directed by law ; and he shall have charge of all books, records, papers, models, machines, and other things belonging to the Patent-Office.” The law is explicit and mandatory that, if certain things exist, a patent for certain objects shall be granted. The law is alike explicit who is to determine if these facts exist. The law designates the judge who is to superintend, and he may even perform all the work. Certain officers have been assigned — paid out of the Treasury — to whom he can intrust examinations. Even all this the Commissioner does under the direction of the Secretary of the Interior.
*139 In the very inception of a matter for a patent the Cornmismissioner controls the application by express enactment, and he is the officer to cause an examination to be made, and could even do it himself. (Section 4893.) “ The Commissioner of Patents, subject to the approval of the Secretary of the Interior, may from time to time establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent-Office.” (Section 483.) We are not appealed to to determine upon the facts and evidences in the application whether the relator is entitled to a patent for an invention or discovery of a new and useful improvement of havesters, for we have not that case before us. The position of the relator is that as the board of examiners-in-chief has decided that he is entitled to a patent, therefore this court must order the Commissioner to issue the patent. If the whole case was before us, we might find that the primary examiner and the Commissioner were right and the board wrong, or vice versa. The final judgment is the action of the Commissioner. That is not appealed from, nor are its merits presented to us. We are asked to decide that he is not entitled to any judgment, but that his duties are merely clerical and ministerial. This would be an unfair interpretation of the powers, attitude, and design of a very important officer of a highly important office of a prominent Department for the orderly regulation of the interests of the country. As an appellate tribunal, ¡ve certainly have jurisdiction over the judgments of the Commissioner, but we must have his judgments before us, and the party seeking to reverse must appeal to us in the proper manner.
Section 4915 may apply to cases of applicants residing in a,ny of the States whose claims have been rejected both by the Commissioner and this court, also to cases rejected by the Commissioner in interference applications.
When this ease was heard at the last term of this court the members thereof were divided in opinion. A bare majority were of the opinion that we could not grant the writ. I thought that this was ground sufficient to raise a doubt; and, under the rules of the organization of a tribunal for the proper adjustment of controversies, this fact being made to appear, we had the right and organic power to call upon counsel learned and experienced in the law to come before *140 us the second time and present arguments why the judgment should be reconsiderd. We have reconsidered our former determination. Counsel have been heard at length a second time, after full opportunity for preparation. This case presented facts somewhat novel on the first impression for the application of well-known principles. The majority of the court is of the opinion that this is not a case proper for a mandamus to issue,• and, so far as I am concerned, I am much better satisfied of the correctness of this conclusion than on former hearings. Each case must depend upon the facts thereof, and we cannot undertake to require other Departments to do that which in their judgment they ought not to do, unless we are in the full possession of all the facts and merits of any application. An appeal ordinarily brings before a eourt the entire merits of a cause, and action may be had understa.ndingly.
Mandamus refused.
Cartter Oh. J. and MaoArthur, J., dissenting.